DONALD F. POOLER
*vs.*
ANTHONY CUCCINELLO

Knox.   Opinion December 5, 1956.

A. *Alan Grossman,* for plaintiff.

*Anthony Cuccinello,* for defendant pro se.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY, SULLIVAN, DUBORD, JJ.

BELIVEAU, J. On motion for a new trial alleging the usual grounds. This is an action for damages resulting from an assault and battery committed by the defendant on the plaintiff October 9, 1955, and resulted in a verdict for the plaintiff in the sum of $55,000.

While several exceptions were taken by the defendant during the trial, these have been abandoned and there is before this court only the motion.

Just before midnight on the 8th of October, 1955, the plaintiff, a member of the Coast Guard, and at that time stationed in Rockland, in company with another young man and two young women, parked his Buick automobile on the Breakwater Road near the Samoset Hotel in the city of Rockland, on land owned by the Samoset Hotel and situated some distance from the dwelling at that time occupied by the defendant and his family. At about one o'clock on the morning of October 9, 1955, the defendant came from his home to this car with a powerful flashlight in one hand and a loaded revolver in the other. There is no evidence or intimation that the plaintiff or the other occupants of the car were creating any disturbance, or in any way conducting themselves so as to cause worry or apprehension to anyone in that neighborhood. They were peaceful and quiet, and this was the situation when the defendant made his demands on the plaintiff. The defendant was attracted to the car by its mere presence and not because of the behavior or conduct of its occupants. This place had been frequented before by the plaintiff and while it was not a public spot, in a narrow sense of the word, it was apparently a place

frequented by people for parking, without objection from the owner. The plaintiff testified that he had done this frequently. As he approached the car the defendant, equipped with the flashlight, and loaded revolver, demanded of the plaintiff that he identify himself, and that he deliver his automobile license, registration and the keys to the car to the defendant. The testimony shows that the plaintiff offered to identify himself but would not surrender the keys or his license. The defendant refused to make himself known and claimed to the plaintiff and the others that he had the right to proceed and act as he did.

If the plaintiff was a trespasser so was the defendant. The defendant had no authority such as he assumed, and the plaintiff was justified in refusing to comply with his demands.

The plaintiff and the young man with him were ordered to leave the car with their hands in the air. After they reached the ground, the defendant, before the assault, fired one shot in the ground, apparently to impress those present. While the two young men were standing on the ground and the plaintiff with his hands resting on the top of the car and more discussion was going on, the defendant again fired his revolver and struck the plaintiff in the chest just above the right nipple. Before this happened, according to the plaintiff's testimony, he asked the defendant that the police be called immediately and this the defendant refused to do.

The plaintiff was taken to the Knox County General Hospital where he was under constant medical and nursing care for six days. He was then taken by ambulance to the Brighton Marine Hospital in Boston where he was a patient and under the same care until he was discharged on April 2, 1956.

While at the Rockland Hospital he was a patient of Dr. Robert Allen, who testified as to the treatment given the

plaintiff while he was there. He was under observation for six days, so Dr. Allen testified, and was constantly administered antibiotics and considerable opiates. An X-Ray was immediately taken which showed the fracture of two ribs and the presence of a metallic foreign body near the liver.

It is clear that the metallic object testified to by Dr. Allen was the bullet fired by the defendant from his revolver.

Dr. Allen further testified that an attempt to remove the bullet by surgery would be "difficult procedure surgically, technically, and otherwise." He further testified that such an operation might endanger the plaintiff's life.

The plaintiff testified that during his stay at the Brighton Marine Hospital the presence of the bullet caused much inconvenience and pain. This pain is in the area where the bullet now is located, and is ever present. At the time of the trial he was still handicapped in performing his usual duties and for that reason was given easier and lighter work.

Dr. Allen further testified that any movement of the bullet, now in the body of the plaintiff, would endanger his life.

The plaintiff at the time of the assault was 22 years of age and in good health. It does not appear in evidence what this young man's life expectancy is but it may be assumed that if this assault had not taken place he might well expect to enjoy a healthy and productive life for some 40 or 50 years. The presence of the bullet is of necessity a source of constant worry and apprehension. This is an important element of the damages suffered by the plaintiff. Again it is probable that he will suffer physical and mental pain as long as he lives and upon return to civilian life his earning capacity will be greatly impaired.

The damages, at first glance, seem to be large. However, having in mind the extent of the injuries which the plaintiff has suffered and will suffer for many years, his limited

ability to earn a living and the constant worry and apprehension of immediate death because of the presence of the bullet in his body, we feel the damages are not excessive. We have not considered the other grounds advanced by the defendant for a new trial because it is difficult to conclude that the jury could have done anything else but find the defendant responsible for the assault and battery.

*Motion for new trial denied.*